Dominic J. MONTEL, Plaintiff-Appellant,

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 75–2025.

United States Court of Appeals, Sixth Circuit.

Argued June 22, 1976.

Decided Dec. 20, 1976.

Frank J. Neff, Irwin W. Barkan, Barkan, Barkan, Neff, Columbus, Ohio, for plaintiff-appellant.

William W. Milligan, U. S. Atty., Thomas D. Thompson, Columbus, Ohio, for defendant-appellee.

Before WEICK, EDWARDS and McCREE, Circuit Judges.

PER CURIAM.

The Appellant, Dominic Montel, is a 72-year-old retired miner who appeals from the District Judge's affirmance of the Secretary's denial of black lung benefits. Appellant retired from employment with the Claycraft Company in 1969 and is currently drawing Social Security old age benefits.

Early in his working life, Appellant worked as a coal miner for seven years in the Blaire and Sharshall Coal Company mines. He also worked (during two different periods) for a total of approximately 35 years in the Claycraft Company clay mine. He also worked with his brothers for 10 years in operating the Montel Coal Company mine. As will be noted below, the principal questions in this case pertain to whether he is entitled to claim black lung benefits as a result of the last two periods.

Appellant claims that the Secretary and the District Judge erred in denying him black lung benefits because he was entitled to the presumption of disability due to pneumoconiosis created by 30 U.S.C. § 921(c)(4) (Supp. II, 1972), and 20 C.F.R. § 410.490(b)(1)(ii) because he was a coal miner with 15 years experience in coal mines.

He contends that he worked for over 15 years with the Claycraft Company as a miner in a 100–foot deep clay mine which had a 4– to 8–inch coal seam in the ceiling and that the coal was mixed with the clay when the latter was extracted, being ultimately burned off in the brick kilns.

The Administrative Law Judge found that

the Applicant's employment at Claycraft Company was not coal mining within the meaning of the Federal Coal Mine Health and Safety Act of 1969 as amended. His activities were primarily that of extracting clay for the making of brick. The basic definition of pneumoconiosis according to 20 C.F.R. 410.401(b)(1) provides, in general, that pneumoconiosis means a chronic dust disease of the lungs arising out of employment in the nation's coal mines. The Applicant's lung disease undoubtedly arose out of employment in a clay mine, which is not, in terms of the Act a coal mine.

It is clear that the statute under which Appellant seeks benefits is, by its terms, applicable to coal mining and to persons "employed in a coal mine." 30 U.S.C. § 902(d) (Supp. II, 1972). We believe that for persons employed in a clay mine to qualify for black lung benefits, coal mining must constitute at least a substantial part of the activity and the exposure. Here, as the Administrative Law Judge and the District Judge found, we have no such proofs.

There is, of course, no reason why Congress could not have made pneumoconiosis benefits available to workers in other industries, but clearly, it declined to do so. The Congressional Record shows that on No-

vember 10, 1971, during consideration of the 1972 Amendments to the Federal Coal Mine Health and Safety Act, Representative Thompson of Georgia offered the following amendment:

(A) "Pneumoconiosis" as used in this act means any respiratory deficiency caused by the repeated inhalation of coal dust, marble dust, rock dust, other quarry dust or man made or natural textile fibers.

(B) "Miner" as used in this act includes any individual who as a result of the working conditions related to his employment in any industry contracts pneumoconiosis as is defined in (A) above.

115 Cong. Rec. 40456 (1971).

This language would have greatly broadened the category of industries covered by the Act so as arguably to include clay mining along with many other industries hazardous to the lungs of employees. The Amendment was, however, rejected.

■ Appellant contends also that he is entitled to have counted towards the 15–year experience in coal mining required for the presumption, a period of 10 years when he worked in the Montel Coal Company mine. As to his claims based on these years, he testified:

Q. A few clarifying items here. How many brothers did you have, Mr. Montel? How many brothers did you have?

A. Seven. Seven boys. There was seven boys and two girls.

Q. All right. Which of the four boys owned the coal mine?

A. We were all in together. Louis, John, Harry, myself.

Q. Did you lease the mine or buy it?

A. We leased it. We leased it from the government.

Q. And how did you pay the lease, so much a month or—

A. So much a ton.

Q. So much a ton.

A. Yeh, we paid five cents a ton.

· This testimony is certainly substantial evidence to support the findings of the Administrative Law Judge and the District Court that Appellant, during these years, was not an "employee" within the normal meaning of the term.

Webster's Third New International Dictionary defines "employee" as follows:

employee or employe . .· . 1: one employed by another usu. in a position below the executive level and usu. for wages 2 *in labor relations*: any worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker.

Congress, in the 1972 Amendments defined miner:

The term "miner" means any individual who is or was employed in a coal mine.

30 U.S.C. § 902(d) (Supp. II, 1972).

The Secretary further defined the term in the regulations:

"Miner" or "coal miner" means any individual who is working or has worked as an employee in a coal mine, performing functions in extracting the coal or preparing the coal so extracted.

20 C.F.R. § 410.110(j).

We believe the Secretary's definition is consistent with the language of the Act.

There is, of course, no reason why an industrial hazard compensation act like the present one could not make benefits available to self-employed persons or working partner-owners. There are many examples of such provisions in State Workmen's Compensation Acts. Indeed, if Mr. Thompson's Amendment just quoted above had been adopted, it could be argued that its language redefining the term "miner" shifted the emphasis from the employment relationship to a relationship to the industrial hazard. Unfortunately, for Appellant's case, the Amendment was defeated.

Appellant's argument that depends upon the presumption of total disability established by 20 C.F.R. § 410.490(b)(3) which requires 10 years of employment as a coal miner is defeated by what has already been

stated in this Opinion since absent the years of employment just discussed pertaining to the Claycraft Clay Mine and the Montel Coal Company, Appellant's evidence does not disclose 10 years of work as a "miner" in the nation's "coal mines."

We agree with the District Judge that the record contains substantial evidence to support the Secretary's conclusion that Appellant was not totally disabled by pneumoconiosis due to coal mining.

The judgment of the District Court is affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. It is clear from the definitions provided in 20 C.F.R. § 410.-110 that in order to be a "miner" for the purposes of the Federal Coal Mine Health and Safety Act, an individual must be working "as an employee in a coal mine," and that an "employee" is an "individual in a legal relationship (between the person for whom he performs services and himself) of employer and employee under the usual common-law rules."

In order to be an employee, therefore, a person must be employed by a legal entity other than himself. Even if he possessed an interest in the entity for which he worked, he would be in the necessary legal relationship with the entity. Accordingly, I do not agree with the Secretary's adoption of the administrative law judge's conclusion that the legal status of the Montel Coal Company—whether it be partnership, joint venture, or corporation—is irrelevant to this case. If the Montel Coal Company were a separate legal entity, then the years during which appellant was employed by it should have been counted as years during which he was employed as a miner for the purpose of the presumption about the origin of disability due to pneumoconiosis.

Because of his improper view of the law, the administrative law judge made no findings regarding the exact status of the Montel Coal Company or the appellant's precise relationship to it. I would remand for the purpose of permitting a resolution of these questions.