DOW CHEMICAL COMPANY, Plaintiff,

v.

Douglas M. COSTLE, Administrator of
the United States Environmental
Protection Agency, Defendant.

Civ. A. No. 78–10019.

United States District Court,
E. D. Michigan, N. D.

July 5, 1978.

On Motion for Reconsideration
Aug. 21, 1979.

William C. Potter, Jr., Fischer, Franklin, Ford, Simon & Hogg, Detroit, Mich., for plaintiff.

R. L. Davis, Staff Counsel, The Dow Chemical Company, Midland, Mich., Thomas M. Woods, Asst. U. S. Atty., Chief, Civ. Div., Detroit, Mich., Charlotte Uram, Pollution Control Section, U. S. Dept. of Justice, Washington, D. C., Lydia Wegman, U. S. Environmental Protection Agency, Washington, D. C., Dorothy M. Attermeyer, U. S. Environmental Protection Agency, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This is an action commenced by plaintiff Dow Chemical Company (hereinafter, Dow) seeking declaratory and injunctive relief to compel defendant Douglas M. Costle, Administrator of the United States Environmental Protection Agency, (hereinafter, EPA) to accept and to approve certain variances granted to Dow by the Michigan Air Pollution Control Commission (hereinafter, MAPCC) as revisions to the Michigan State Implementation Plan consistent with the provisions of the Clean Air Act of 1970 as amended by the Clean Air Act Amendments of 1977. 42 U.S.C. § 7401 *et seq.* The action is before the Court on plaintiff's motion for preliminary or permanent injunction or, in the alternative, for a writ of mandamus. Defendant has responded to plaintiff's motion with a motion to dismiss for lack of subject matter jurisdiction in the district court and for failure to state a claim on which relief can be granted.

The parties having agreed that the operative facts are not in dispute and the Court having had an opportunity to review the extensive briefs submitted by the parties and having heard oral argument on the legal issues before it on June 14, 1978, is now prepared to rule.

### I.  *FACTS*

In 1970, Congress enacted the Clean Air Act which required the EPA to adopt national air quality standards for the "ambient air" or the outdoor air used by the general public. The federal ambient air quality standards were published in the

Federal Register and the fifty states were required to enact "state implementation plans" to ensure that the federal standards were met. State implementation plans had to contain specific emission limitations designed to limit the volume of air contaminants emanating from individual sources within a state and to assure compliance with the federal ambient air quality standards. State implementation plans were submitted to EPA for approval and EPA was required to review such plans within four months after receipt of the same.

After approval of a state implementation plan by the EPA, a state could revise the plan, grant a variance to a particular source or agree on a compliance schedule with a particular source to relieve that particular party of strict compliance with the state's implementation plan. Such a revision, variance or compliance schedule would be subject to approval by the Administrator if he determined that such a revision met the general requirements applicable to the original state implementation plan. 42 U.S.C. § 7410(a)(2), (a)(3)(A). See *Train v. NRDC*, 421 U.S. 60, 80, 95 S.Ct. 1470, 43 L.Ed.2d 731, 746 (1975).

On February 3, 1972, MAPCC submitted to EPA for review and approval the Michigan State Implementation Plan (hereinafter, SIP) as required under the Clean Air Act and, with certain exceptions, EPA approved the Michigan SIP in May, 1972. The Michigan SIP set forth emission limitations for sulfur dioxide which had to be met by July 1, 1975 by each source in the State or be subject to an enforcement action by either the State or by EPA.

Dow operates power plants in Midland, Michigan which burn fossil fuel (coal) and which emit sulfur dioxide into the ambient air. Aware that it would be unable to attain the emission limitations for sulfur dioxide as set forth in the Michigan SIP by July 1, 1975, Dow sought a variance from MAPCC. On May 7, 1974 after public notice and public hearing, MAPCC and Dow entered into a Consent Order (# 12–73–05) which permitted Dow to utilize a Supplementary Control System (SCS) to limit sul-

fur dioxide emissions during periods when the ground level concentration of pollutants exceeded the federal ambient air quality standards. The Order also permitted Dow to exceed Michigan SIP emission limitations until July 1, 1980 at which time Dow would totally convert to nuclear power generated from a proposed nuclear plant to be constructed in Midland, Michigan by Consumers Power Company.

On June 13, 1974, MAPCC sent the Consent Order to EPA along with several others of similar nature and sought the "approval of the EPA of these compliance schedules." On July 16, 1974, the EPA acknowledged receipt of the Order and informed MAPCC that the schedules were being reviewed. No other action by MAPCC or by the EPA has occurred on this Consent Order.

In 1977, when it became evident that Midland's proposed nuclear power plant would not be completed by July 1, 1980, Dow and MAPCC entered into a new Consent Order (# 10–1977). The Consent Order permitted Dow to continue to utilize Supplemental Control Systems (SCS) to limit sulfur dioxide emissions and required Dow to convert from fossil fuel to oil fuel by July 1, 1980. On July 21, 1977, MAPCC approved the Order and transmitted the same to EPA as a "compliance schedule" seeking EPA's approval and making itself available to EPA if any problems developed. Upon approval of the 1977 Consent Order by MAPCC, the 1974 Consent Order was rescinded.

On August 10, 1977, EPA informed MAPCC that since the 1977 Consent Order extended compliance of the emission limitations for sulfur dioxide beyond the Michigan final attainment date of July 1, 1975, additional information (specifically, a control strategy demonstration) was required before the EPA could consider the Consent Order and approve the same as a revision of the Michigan SIP. EPA also informed MAPCC that the use of Supplementary Control Systems (SCS) could only be approved, if the Consent Order complied with certain EPA regulations and the Sixth Cir-

cuit decision of *Big Rivers v. EPA*, 523 F.2d 16 (CA 6, 1975).

On August 22, 1977, MAPCC informed the EPA that MAPCC had transmitted all the data necessary for consideration of the compliance schedule and that if specific information was needed, EPA was to contact MAPCC. EPA did not formally respond to the August 22 correspondence from MAPCC.

On October 25, 1977, a meeting between Dow, MAPCC and EPA officials was held to discuss the problems with the 1977 Consent Order. EPA, informally, reiterated that the Agency had no flexibility to approve Supplementary Control Systems (SCS) nor to permit noncompliance after July ·1, 1979.

On January 25, 1978, in response to a request from Dow for another meeting to discuss the official EPA position on Supplementary Control Systems (SCS), the Administrator declined the request and concluded that the determinations rendered by EPA officials in Region V to Dow were mandated by the Clean Air Act and EPA regulations.

Dow commenced this action on February 3, 1978 and moved for preliminary injunction and writ of mandamus on March 2, 1978. EPA moved to dismiss on April 6, 1978.

## II. *ISSUES*

Dow contends that EPA is under a mandatory duty to approve revisions of a state implementation plan. when the revision assures compliance with the federal ambient air quality standards and that the EPA position to disapprove proposed revisions to state implementation plans which authorize the use of Supplementary Control Systems (SCS) is arbitrary, capricious and contrary to law. Accordingly, Dow seeks a declaratory judgment from the Court that the 1977 Consent Order granted to Dow by MAPCC can be approved by EPA as a revision to the Michigan SIP. Additionally, Dow seeks a writ of mandamus to compel the Administrator of EPA to so accept the 1977 Consent Order as a revision to the Michigan SIP.

Alternatively, Dow seeks a declaratory judgment that the 1974 Consent Order granted to Dow by MAPCC and previously submitted to EPA . on June 13, 1974 be approved as a revision to the Michigan SIP.

In response, EPA contends that the district court is without subject matter jurisdiction to review the Administrator's actions as the proposed revision has not been submitted to the Administrator for approval as a revision to the Michigan SIP. Further, EPA contends that the Administrator does not have a mandatory duty to approve the proposed revision without an independent determination of its compliance with the general requirements applicable to the original state implementation plan and that the Administrator cannot be compelled to perform a discretionary act under the Mandamus Act, 28 U.S.C. § 1361. EPA also asserts that if the proposed revision had been submitted to the Administrator and had been disapproved as Dow contends, then proper judicial review of such action is exclusively in the Sixth Circuit Court of Appeals under § 307 of the Clean Air Act. 42 U.S.C. § 7607. For these reasons, EPA seeks dismissal of the action for want of jurisdiction in the district court.

Alternatively, EPA asserts that Dow has failed to establish the prerequisites necessary to secure a preliminary or a permanent injunction.

## III. *JURISDICTION*

Jurisdiction is the pivotal issue in this action. Dow asserts that the Court has jurisdiction over this action under § 304 of the Clean Air Amendments of ·1977 (42 U.S.C. § 7604(a)(2)), under federal question jurisdiction (28 U.S.C. § 1331(a)), and under the Mandamus Act (28 U.S.C. § 1361).

### A. *CLEAN AIR ACT*

Section 304(a)(2) of the Act provides that:· ". . . any person may commence a civil action on his own behalf . . . (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under

this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2)

Section 110(a)(3)(A) of the Act provides that:

"The Administrator shall approve any revision of an implementation plan applicable to an air quality control region if he determines that it meets the requirements of [§ 110(a)(2)] . . ." 42 U.S.C. § 7410(a)(3)(A)

Dow contends that the phrase "shall approve any revision" requires the Administrator to perform a mandatory duty and that § 304 of the Clean Air Act empowers an interested person to sue the Administrator in the district court for failure to perform such nondiscretionary duties under the Act. *Kennecott Copper Corp. v. Train*, 424 F.Supp. 1217 (D.C.Nev., 1976), rev'd 572 F.2d 1349 (CA 9, 1978). EPA contests that § 304 of the Clean Air Act does not apply in this situation as the duties of the Administrator in reviewing a proposed revision to a state implementation plan are discretionary and require independent judgment. EPA relies on *Kennecott Copper Corp. v. Train*, 572 F.2d 1349 (CA 9, 1978) in which the Ninth Circuit Court of Appeals reversed the Nevada District Court for asserting jurisdiction under § 304 of the Clean Air Act in a similar action.

In *Kennecott*, the State of Nevada submitted a proposed revision of the Nevada SIP to the EPA which permitted Kennecott Copper to exceed the emission limitations for sulfur dioxide. Five days after the revision was transmitted to EPA for approval, Kennecott Copper commenced an action against EPA in U.S. District Court requiring the EPA to approve the revision. Kennecott relied on § 304 of the Clean Air Act as a basis for jurisdiction. The District Court agreed with Kennecott and granted a preliminary injunction requiring the Administrator to approve the revision. The Ninth Circuit, however, did not agree and expressly stated that "§ 304(a)(2) does not afford jurisdiction because the duty of the EPA to review the variance Nevada granted is one which is discretionary." *Kennecott Copper, supra*, 572 F.2d at 1353.

Dow contends that the Kennecott decision from the Ninth Circuit should be construed narrowly and is distinguishable on its own facts.

In *Kennecott*, plaintiff filed its civil action five days after the proposed revision was submitted to EPA for approval and failed to give the Administrator sixty days notice which is required under § 304 of the Clean Air Act (42 U.S.C. § 7604(b)(1)). Kennecott Copper also failed to give the Administrator the required four month period within which to approve or to disapprove the proposed revision under § 110(a)(2) of the Clean Air Act (42 U.S.C. § 7410(a)(2)). Dow asserts that its civil action is timely under § 304(b) of the Clean Air Act as its proposed revision was submitted to the EPA on July 21, 1977 by MAPCC and that the Administrator has had six months to review the proposed revision and has, in fact, informally disapproved it.

The Court, however, believes that the *Kennecott* decision cannot be construed as narrowly as Dow contends as such an interpretation would overlook the Ninth Circuit's learned discussion on the Administrator's discretionary duties under § 110 of the Clean Air Act (42 U.S.C. § 7410) and the inapplicability of § 304 of the Clean Air Act (42 U.S.C. § 7604) to compel the Administrator to perform such duties by individual citizen suits. See *Kennecott, supra*, 572 F.2d at 1353–56, especially footnote 2, p. 1354.

The Court, therefore, concurs with the holding in *Kennecott* and finds that the duties of the Administrator in reviewing a proposed revision of a state implementation plan are discretionary and do mandate independent determinations by the Administrator that the requirements of § 110 of the Clean Air Act are not satisfied prior to approval or disapproval of a proposed revision.

The Court further finds that the administrative process of reviewing the 1977 Consent Order as a proposed revision to the

Michigan SIP has been delayed by the MAPCC's failure to complete the record as requested by the EPA on August 10, 1977. Until such record is compiled, the Administrator cannot be compelled to act either favorably or unfavorably on the proposed revision.

■ Accordingly, the Court finds that it does not have jurisdiction over this action under § 304 of the Clean Air Act.

### B. *FEDERAL QUESTION JURISDICTION 28 U.S.C. § 1331*

Dow contends that the district court has jurisdiction to determine and to grant declaratory judgment on the federal question whether the use of Supplementary Control Systems (SCS) is permissible under the provisions of the Clean Air Act if the federal ambient air quality standards are attained at all times.

It is a difficult question whether Dow can assert § 1331 jurisdiction in the District Court on a question regarding the EPA and the Clean Air Act. The Court, however, believes that intervention by the district court would be an improper interference with the administrative process and with the judicial review set forth in the statute.

■ The Clean Air Act and the regulations promulgated thereunder do require a formal procedure whereby variances are submitted to the Administrator for review as proposed revisions to a state implementation plan. The final action of the Administrator to approve or to disapprove a proposed revision is reviewable in the appropriate circuit court of appeals under § 307 of the Clean Air Act (42 U.S.C. § 7607).

■ Although it is apparent that the EPA disapproves Dow's use of Supplementary Control Systems, it is improper for this Court to determine the propriety of such systems under the Clean Air Act when the exclusive remedy is judicial review under § 307 of the Clean Air Act in the Sixth Circuit Court of Appeals if the final action of the Administrator is to disapprove the proposed revision. See *Kennecott Copper Corp. v. Train, supra,* 572 F.2d at 1356–57;

*Environmental Defense Fund v. Costle,* 448 F.Supp. 89, 92–3 (D.D.C.1978).

Accordingly, the Court finds that it does not have jurisdiction under 28 U.S.C. § 1331.

### C. *MANDAMUS ACT 28 U.S.C. § 1361*

■ The Mandamus Act vests original jurisdiction in the district court of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiff. It is well settled law that a writ of mandamus can only compel an official to perform a ministerial duty and not a discretionary act. In light of the Court's finding that the determination of the Administrator to approve or to disapprove a proposed revision to a state implementation plan is discretionary and not mandatory under § 304 of the Clean Air Act, the Mandamus Act does not afford Dow a basis for jurisdiction in the district court.

Accordingly, the Court finds that it does not have jurisdiction under 28 U.S.C. § 1361.

For these reasons, the Court finds that it is without subject matter jurisdiction over this action and will dismiss the complaint. Plaintiff's motion for preliminary injunction is DENIED. Defendant's motion to dismiss is GRANTED and the complaint is DISMISSED.

IT IS SO ORDERED.

### ON MOTION FOR RECONSIDERATION

On July 12, 1978, judgment was entered dismissing plaintiff's complaint because the Court lacked jurisdiction over the subject matter of the action.

The case is presently before the Court on plaintiff's timely motion for reconsideration, for the making of amended and additional findings of fact, and modification of the judgment. F.R.Civ.P. 52(b), Local Rule IX(n).

The Court finds that plaintiff has failed to demonstrate any palpable defect in the Court's original order or present any issue

not previously ruled on by the Court. Local Rule IX(n). Further, plaintiff has not shown that the operative facts relied upon by the Court in its Memorandum Opinion and Order dated July 5, 1978, and which were agreed to by the parties to this action, are clearly erroneous. F.R.Civ.P. 52.

Most importantly, however, the Court has reviewed the possible basis for jurisdiction proffered by plaintiff and again concludes that it lacks jurisdiction over the subject matter of this action. *Kennecott Copper v. Train*, 572 F.2d 1349 (CA 9, 1978); 42 U.S.C. § 7607. Rather, the claims are more properly asserted in the Sixth Circuit Court of Appeals as an appeal from the administrative process pursuant to the provisions of the Clean Air Act, 42 U.S.C. § 7607.

For the above stated reasons, and for the reasons more particularly set out in its Memorandum Opinion and Order dated July 5, 1978 in this cause, the Court HEREBY DENIES plaintiff's motion for amendment and reconsideration.

IT IS SO ORDERED.