**LOUISVILLE AND NASHVILLE RAILROAD CO., et al., Plaintiffs-Appellees,**

v.

**Raymond J. DONOVAN, Secretary of Labor, et al., Defendants-Appellants.**

No. 82–5072.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1982.

Decided Aug. 12, 1983.

Rehearing Denied Sept. 28, 1983.

**1244**

Stanley E. Alderson, Dept. of Justice, Washington, D.C., Ronald E. Meredith, U.S. Atty., Louisville, Ky., Leonard Schaitman, Marleigh Dover (argued), U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants-appellants.

Edgar A. Zingman, Wyatt, Tarrant & Combs, Louisville, Ky., Charles Landrum, Jr., Landrum, Patterson & Dickey, Lexington, Ky., Bert T. Combs (argued), Louisville, Ky., for plaintiffs-appellees.

Before EDWARDS, Chief Circuit Judge, ENGEL, Circuit Judge, and WEICK, Senior Circuit Judge.

ENGEL, Circuit Judge.

The Secretary of Labor appeals from a judgment of the district court which permanently enjoins him from applying the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901 *et seq.*, to railroad employees, former railroad employees, or railroads. Upon consideration, we conclude that the district court lacked jurisdiction to grant the declaratory and injunctive relief sought by the plaintiffs. Accordingly, we remand with directions to vacate the judgment and to dismiss the action.

Fifteen railroads which transport coal in interstate commerce brought this action in the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. §§ 1331, 1337, 1361 and 2201, as amended, challenging Department of Labor guidelines for determining the eligibility of individuals engaged in coal transportation for BLBA benefits.[1] At the time this suit was commenced, more than 700 claims had been filed under the BLBA by former and

---

1. The BLBA establishes a program for payment of benefits to miners totally disabled by pneumoconiosis (black lung disease) and to their survivors. *See Lawson v. Secretary of Health and Human Services,* 688 F.2d 436 (6th Cir. 1982). The BLBA authorizes the Secretary of Labor to promulgate regulations prescribing standards of eligibility for claims filed after December 31, 1972 (Part C). 30 U.S.C. § 921; *see also Lawson,* 688 F.2d 436. The definition of "miner" under the BLBA was expanded by the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, to include:

> any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

*Id.* § 2(b); 30 U.S.C. § 902(d) (Supp.1977).

The Federal Mine Safety and Health Amendments Act of 1977, Pub.L. 95–164, amended the definition of "operator" as well, adding to "any owner, lessee, or other person who operates, controls, or supervises a coal mine" the phrase "or any independent contractor performing

services or construction at such mine." *Id.* § 102(b); 30 U.S.C. § 802 (Supp.1977).

Based on these amendments, the Department of Labor issued guidelines defining "the transportation of coal" for the purposes of determining eligibility under the BLBA:

> *Transportation* of coal includes the transportation of coal usually performed by a coal mine operator, transportation from extraction site to preparation plant or tipple, and any transportation of coal up to the time when the extraction and preparation of the coal has been completed or the time when the extracted coal enters into the stream of commerce.

> Thus, persons engaged in transportation of coal from a mine site to the ultimate consumer of the coal, or in functions integral to that activity, would not be covered, even if part of their time is spent in or around the mine site. However, those engaged in transport functions between the extraction site and the tipple would be covered where their work is integral or necessary to the preparation or extraction process.

App. 155 (Revised Chap. 2–600, Coal Mine (BLBA) Procedures Manual, BLBA Tr. No. 81–3). The railroads contend that this interpretation of the BLBA is erroneous.

current railroad employees. The district court accepted the railroads' argument that as a matter of law they are not included within the definition of "operator" under the BLBA and, hence, are not liable for BLBA benefits.

■ It is well established that the Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of federal jurisdiction. *Schilling v. Rogers,* 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Michigan Savings and Loan League v. Francis,* 683 F.2d 957 (6th Cir.1982); *King v. Sloan,* 545 F.2d 7 (6th Cir.1976). Similarly, some courts have held that 28 U.S.C. § 1361, which provides for "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" does not provide an independent ground for subject matter jurisdiction. *Starbuck v. City and County of San Francisco,* 556 F.2d 450 (9th Cir.1977); *Craig v. Colburn,* 414 F.Supp. 185 (D.C.Kan.1976), *aff'd,* 570 F.2d 916 (10th Cir.1978); *Jeno's, Inc. v. Commissioner of Patents and Trademarks,* 498 F.Supp. 472 (D.C.Minn.1980). *But cf. Dow Chemical v. Costle,* 480 F.Supp. 315 (E.D. Mich.1978), *aff'd,* 659 F.2d 724 (6th Cir. 1981) (dictum inferring section 1361 may independently grant subject matter jurisdiction). A clearer limitation on section 1361 jurisdiction is recognized where an exclusive statutory method of reviewing administrative action exists. *CETA Workers Organizing Committee v. City of New York,* 617 F.2d 926 (2d Cir.1980); *Loveladies Property Owners Association, Inc. v. Raab,* 430 F.Supp. 276 (D.N.J.1975), *aff'd,* 547 F.2d 1162 (3d Cir.1976); *see also Wilson v. Secretary of Health and Human Services,* 671 F.2d 673 (1st Cir.1982) (availability of administrative remedies and judicial review precludes mandamus jurisdiction); *Association of American Medical Colleges v. Califano,* 569 F.2d 101 (D.C.Cir.1977) (same). Likewise, district court jurisdiction under 28 U.S.C. § 1337, over "any civil action or proceeding arising under any act of Congress regulating commerce or protecting

trade and commerce . . . " may be precluded by a statutory scheme of review. *Board of Trustees of Memorial Hospital v. NLRB,* 523 F.2d 845 (10th Cir.1975); *United Electrical Contractors Association v. Ordman,* 258 F.Supp. 758 (N.D.N.Y.1965), *aff'd,* 366 F.2d 776 (2d Cir.1966), *cert. denied,* 385 U.S. 1026, 87 S.Ct. 753, 17 L.Ed.2d 674 (1967).

■ The same principle which limits jurisdiction under sections 1337 and 1361 applies with equal force to the general federal question jurisdiction granted in 28 U.S.C. § 1331. In *Memphis Trust Co. v. Board of Governors of the Federal Reserve System,* 584 F.2d 921 (6th Cir.1978), our court held that "[g]eneral federal question jurisdiction under [§ 1331] . . . is not available . . . [w]here Congress has provided an adequate procedure to obtain review of agency action . . . ." *Id.* at 925.

*Whitney National Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), provides the basic authority for this principle. That decision established that only those courts upon which Congress has bestowed authority have jurisdiction and that when Congress designates a forum for judicial review of administrative action, that forum is exclusive. *Id.* at 420, 422, 85 S.Ct. at 557, 558. We are convinced that with respect to the BLBA, Congress has conferred upon this court such sole and exclusive jurisdiction. In so holding, we agree with Judge Garth's analysis in *Compensation Department of District Five v. Marshall,* 667 F.2d 336 (3d Cir.1981). In that case, the United Mine Workers commenced an original action against the Secretary of Labor in district court contesting the Secretary's interpretation of BLBA provisions concerning the use of x-rays in determining the existence or non-existence of pneumoconiosis in a claimant. Judge Garth observed:

The central issue in this case is whether subject matter jurisdiction over District Five's complaint exists in the district courts. We hold that it does not, because we agree with the district court that the scheme of review established by Congress for determinations of black lung disability benefits was intended to be exclusive. Thus, the proper method for contesting

the Secretary of Labor's interpretation of § 413(b) is to exhaust the administrative remedies provided under the statute and then to seek review, if desired, in the court of appeals, rather than to seek an injunction against the Secretary in district court.

Underlying our conclusion that the district court lacked subject matter jurisdiction is the general rule that if "there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *City of Rochester v. Bond,* 603 F.2d 927, 931 (D.C.Cir.1979). Moreover, "there is a strong presumption against the availability of simultaneous review in both the district court and the court of appeals." *Sun Enterprises, Ltd. v. Train,* 532 F.2d 280, 287 (2d Cir.1976). Because Congress has specifically provided for a statutory scheme whereby claims must first be decided administratively and then reviewed in the courts of appeals, with jurisdiction expressly provided for in the district courts only in specific, limited circumstances, our analysis begins with a presumption that the district court lacked subject matter jurisdiction over this action. We look then to whether an examination of the statute's legislative history, purpose, and design reveals circumstances appearing in this case which are sufficient to overcome that presumption.

667 F.2d at 340. Although *Compensation Department* dealt with interpretation of a different section of the BLBA, we find its discussion and analysis of the four considerations underlying the *Whitney National Bank* decision cogent and persuasive in this case as well. *See* discussion at 667 F.2d at 341–42.

In reaching a contrary conclusion, the district court relied primarily upon *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). That case held that the Federal Food, Drug and Cosmetic Act did not prohibit pre-enforcement review of certain regulations promulgated by the Commissioner of Food and Drugs where the issue of statutory construction was "purely legal" and the regulations challenged were "final agency action" within section 10 of the Administrative Procedure Act ("APA"). Noting that the existence of 700 pending claims for black lung benefits against the plaintiff railroads made the issue "fit for judicial decision," the district judge concluded that the applicability of the BLBA to railroads was a "purely legal issue" and that the Department of Labor's adoption of the challenged internal guidelines clarifying the definition of a "miner" constituted "final action." *See* note 1, *supra.*

With respect to *Abbott Laboratories,* it is sufficient to note that that decision dealt exclusively with application of the APA and that Congress in enacting the BLBA expressly excluded the provisions of the APA. 30 U.S.C. § 956. Moreover, later authority indicates that *Abbott Laboratories* "arguably assumed with little discussion that the APA is an independent grant of subject matters jurisdiction." *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). *Califano* determined that in fact the APA does not grant jurisdiction. Abbott Laboratories merely dealt with the timing of judicial review and not with the source of primary subject matter jurisdiction at issue here.

Nearly all the cases which address the question of district court jurisdiction for nonstatutory review of administrative action recognize that in narrow circumstances some residuum of federal question subject matter jurisdiction may exist in the United States District Court, although apparently otherwise precluded by a comprehensive statutory review scheme. Thus, as Judge Garth observed in *Compensation Department:* "[i]f the remedies provided for in the statutory scheme of review are inadequate in a particular case, an argument can be made that Congress did not intend to forbid the district courts from taking jurisdiction." 667 F.2d at 343 (footnote omitted). These exceptional circumstances are outlined in a careful and illuminating opinion by Judge Spottswood Robinson in *Nader v. Volpe,* 466 F.2d 261 (D.C.Cir.1972). In *Nader* the D.C. Circuit dismissed for lack of subject matter jurisdiction a complaint seeking a mandato-

ry injunction requiring the Secretary of Transportation to disclose certain communications between his department and the Office of the President. Referring to the scheme of judicial review under the National Traffic and Motor Vehicle Safety Act, the court observed:

> The legislative history of the Act is almost completely silent as to the exclusivity or concurrency of the review procedures which it specifies. Generally, however, when Congress has specified a procedure for judicial review of administrative action, *courts will not make nonstatutory remedies available without a showing of patent violation of agency authority or manifest infringement of substantial rights irremediable by the statutorily-prescribed method of review . . . .*"

466 F.2d at 265–66 (emphasis added) (footnote omitted).

As stated above, we believe *Compensation Department* convincingly establishes that the BLBA statutory scheme of review is exclusive. As Judge Garth pointed out, the BLBA allows for district court jurisdiction only in two very narrow situations involving enforcement of compensation orders:

> If an operator fails to pay an award of disability benefits for which he is liable, the successful claimant or the Secretary may bring an action in district court to enforce the order. *See* 33 U.S.C. § 921(d). Moreover, the Secretary may bring an action to enforce a lien against an operator who fails to make payments to the Black Lung Disability Trust Fund.

30 U.S.C. § 934(b)(4)(A). *See also* 33 U.S.C. § 918 (collection of defaulted payments).

667 F.2d at 339, n. 6. In addition the BLBA provides that any party dissatisfied with the Benefits Review Board's determination of any "question of law or fact," 33 U.S.C. § 921(b)(3), "may obtain a review of that order in the United States Court of Appeals for the circuit in which the injury occurred." 33 U.S.C. § 921(c). Provisions for review of compensation orders and of decisions of the Benefits Review Board are comprehensively set out in 33 U.S.C. § 921.[2] Thus, under this exclusive scheme of statutory review, in order to invoke district court jurisdiction, the railroads must show either a patent violation of agency authority or a manifest infringement of a substantial right irremediable under the statutory scheme. *Nader,* 466 F.2d at 265–66.

The plaintiff railroads' best argument here is to contend that the BLBA clearly and unquestionably excludes railroads from its operation and that therefore the Secretary has patently violated his authority. The statute, however, far from clearly excluding railroads, expressly encompasses not only mine operators in the traditional sense but also "any independent contractor performing services or construction at [a] mine." 30 U.S.C. § 802(d). This expanded definition does not clearly exclude railroads, especially when viewed in conjunction with the amended definition of "miners" which includes "an individual who works or has worked in . . . transportation in or around a coal mine . . . ." 30 U.S.C. § 902(d). On

---

**2.** Section 921(a) provides that a compensation order becomes final 30 days after it is filed in the Office of the Deputy Commission "unless proceedings for the suspension or setting aside of such order are instituted as provided by subdivision (b) of this section." 33 U.S.C. § 921(a). More importantly, section 921(b)(3) provides: "[t]he [Benefits Review] Board shall be authorized to hear and determine appeals raising a substantial *question of law* or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof." 33 U.S.C. § 921(b)(3) (emphasis added). Finally, section 921(e) states that: "[p]roceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an

award, shall not be instituted otherwise than as provided in this section and section 918 of this title." 33 U.S.C. § 921(e). Section 918 establishes district court jurisdiction for the specific purpose of collecting defaulted compensation payments. This limited grant of district court authority obviously does not apply in this case since no railroad employee claimant has yet been awarded benefits.

The BLBA adopted these adjudication procedures of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* for processing BLBA claims, 30 U.S.C. § 932(a). *See Director of Office of Workers' Compensation Program v. National Mines Corp.,* 554 F.2d 1267 (4th Cir.1977).

this point, the district court went beyond the statute and relied primarily on Senate Report No. 95–209, which states that the definition of miner "does not contemplate inclusion of those workers employed by a railroad . . . ." The court found that this statement was confirmed in a remark on the Senate floor by Senator Randolph, 123 Cong.Rec. 24,239 (1978). Finally, the district court reasoned:

> If Congress had intended the 1978 amendment to include employees from other industries such as railroads, all Congress had to do was say so. It's just that simple. To the contrary; an all-inclusive amendment was introduced in Congress in 1972 to provide Black Lung benefits to any individual employed in any industry who contracted Black Lung. This amendment was not enacted. *Montel v. Weinberger,* 546 F.2d 679 (6th Cir.1976).

App. 342.[3]

The district court's reliance upon Senate Report 95–209 and Senator Randolph's statement appears somewhat misplaced. The legislative history indicates that the Senate bill was *not passed* and that in lieu thereof the House bill was enacted. 1978 U.S.Code Cong. & Ad.News 237. House Conference Report No. 95–864 accompanying the finally enacted legislation explains:

> The conference substitute conforms generally to the Senate amendment with an amendment to clarify that transportation and construction workers are covered only to the extent they work in or around a coal mine and are exposed to coal dust. The conference substitute elsewhere provides that coal mine construction and transportation employers who are not

also mine operators shall not be obligated to purchase insurance for the payment of claims under the Federal Mine Safety and Health Act of 1977. However, *the conference substitute* elsewhere *also provides that* coal mine construction and *transportation employers* who are not also mine operators *shall be individually liable for payment of approved claims in appropriate cases.* (See section 7, which amends the Act to require such employers to secure a bond or otherwise guarantee the payment of such claims once approved.)

1978 U.S.Code Cong. & Ad.News 309 (emphasis added).

The express language of the statute, the legislative intent expressed in the conference report accompanying the BLBA, and the express grants of authority to the Secretary of Labor in 30 U.S.C. §§ 932 and 957, reveal that the Secretary has considerable discretion in making initial determinations of BLBA applicability, such as the interpretations incorporated in the guidelines challenged here.

Although the issue of whether the Secretary has correctly exercised his rulemaking authority and other discretion is not properly before us,[4] the statutory scheme reveals that there has been no clear overreaching of administrative authority as would warrant the exercise of mandamus or other extraordinary authority by the district court.

It is true, as the district court pointed out, that Congress rejected proposed amendments which would have extended BLBA benefits very broadly to any industry whose working conditions might cause

---

**3.** The district court also opined that extensive federal legislation already fully protected injured and disabled railroad employees under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.;* the Railroad Retirement Act, 45 U.S.C. § 231 *et seq.;* and the Railroad Unemployment Insurance Act, 45 U.S.C. § 351 *et seq.* None of these acts indicate any intention to preclude additional protections or benefits such as those provided by the BLBA. The mere existence of these three acts does not suggest a patent violation of authority on the Secretary's part.

**4.** Compare *Cumberland Capital Corp. v. Harris,* 621 F.2d 246 (6th Cir.1980), which also in-

volved a party's attempt to circumvent the administrative process by obtaining a district court declaration that it was not within a statutorily defined class. The district court correctly dismissed the action for lack of subject matter jurisdiction. 490 F.Supp. 551 (W.D.Tenn. 1977), *rev'd* (on other grounds), 621 F.2d 246 (6th Cir.1980). We were able to reach the merits of *Cumberland Capital's* substantive claim, however, because the petition for review in another case properly before us had been consolidated within for consideration on appeal.

pneumoconiosis in its employees. *Montel v. Weinberger,* 546 F.2d 679, 681 (6th Cir. 1976). Nevertheless, in enacting later amendments Congress has recognized that the earlier definition of "miner" did not necessarily include all of those persons working "in or around a coal mine or coal preparation facility in the extraction or preparation of coal." *See* note 1, *supra;* 30 U.S.C. § 902(d). In fact, Congress expressly recognized that a person working in transportation in or around a coal mine might be exposed to coal dust as a result of such employment and should not be deprived of BLBA benefits merely because his employer is not an "operator" in the traditional sense. We point all of this out not with the intent of making any definitive construction of the BLBA, but only to demonstrate that the BLBA itself and its legislative history provide no basis for the exercise of district court jurisdiction premised on a finding of a patent violation of agency authority or a manifest infringement of substantial rights irremediable by the statutorily prescribed method of review. *Nader,* 466 F.2d at 265–66.

Accordingly, the judgment of the district court is vacated and cause remanded with instructions to dismiss the complaint for want of subject matter jurisdiction.