**In re James SEBBEN, John Cossolotto, Bruno Lenzini, Charles Tonelli, on behalf of themselves and all others similarly situated, Petitioners.**

**James SEBBEN; John Cossolotto; Bruno Lenzini; and Charles Tonelli, on behalf of themselves and all others similarly situated, Appellants,**

v.

**William E. BROCK, III; United States Secretary of Labor; United States Department of Labor; and Steven Breeskin, Acting Deputy Commissioner, U.S. Department of Labor, Division of Coal Mine Workers' Compensation, Appellees.**

Nos. 86–1295, 86–1315.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1986.

Decided March 25, 1987.

Rehearing and Rehearing En Banc Denied June 25, 1987.

and representatives of a group of claimants seeking benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–42 (1982 & Supp. III 1985) (codified as amended in 1972, 1978, 1981 and 1984) (the BLBA). In the district court, they sought certification of a class and a writ of mandamus under 28 U.S.C. § 1361 to compel the Department of Labor to consider or reconsider the claims of the proposed class under 30 U.S.C. § 902(f)(2) (1982) as interpreted by *Coughlan v. Director, Office of Workers' Compensation Programs,* 757 F.2d 966 (8th Cir.1985). The district court denied the application for the writ and dismissed the claim without certifying the class.[1] It held that *Coughlan* was not applicable to claims previously denied by the Department of Labor and not timely pursued on appeal. It further held that it was without jurisdiction because the BLBA conferred exclusive jurisdiction upon the circuit courts of appeals to review administrative decisions under the BLBA.

On appeal, the Secretary of Labor (Secretary) concedes that the proper standard for review of the appellants' BLBA claims is articulated in *Coughlan.* The Secretary has also agreed to apply *Coughlan* in all pending cases in the Eighth Circuit.

In *Coughlan,* this Court considered claims of miners and their survivors who argued that the miners had become totally disabled due to black lung disease (pneumoconiosis) under the BLBA. The presence of pneumoconiosis in *Coughlan* was proved by a positive chest x-ray of the miner. We held that a positive x-ray was sufficient to create a rebuttable presumption of pneumoconiosis under 20 C.F.R. § 410.490 (1986) (known as the "interim" regulation). We reasoned that even though the pre-

I. John Rossi, Des Moines, Iowa, for appellants.

John E. Beamer, Des Moines, Iowa, for appellees.

Before HEANEY and ROSS, Circuit Judges, and LARSON,* Senior District Judge.

HEANEY, Circuit Judge.

The appellants, James Sebben, John Cossolotto, and Charles Tonelli, are claimants

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. Because the district court never certified the class, we refer to the group of claimants who intended to join it as the "class," with the recognition that it is not a class within the meaning of Fed.R.Civ.P. 23. *See Baxter v. Palmigiano,* 425 U.S. 308, 310–11 n. 1, 96 S.Ct. 1551, 1554 n. 1, 47 L.Ed.2d 810 (1976).

On remand, the district court shall define the class and determine which appellants could appropriately represent it. If some or all cannot, application may be made to the district court for designation of the appropriate class representatives. We note that one of the appellants named in this appeal, Bruno Lenzini, has been awarded benefits under the BLBA. *Lenzini v. Director, Office of Workers' Compensation Programs,* No. 86–1001, slip op. (8th Cir. May 8, 1986). Lenzini therefore would not be an appropriate class representative.

sumption of pneumoconiosis in section 410.490 originally only applied to claims made prior to July 1, 1973, a 1977 amendment to the BLBA, 30 U.S.C. § 902(f)(2) (1982), revived the presumption and made it applicable to the claims presented. *Coughlan,* 757 F.2d at 967–68.

The appellants allege that they and the "class" all filed claims on or before March 31, 1980, thus entitling them to the section 410.490 presumption accorded to the claimants in *Coughlan.*[2] They further allege that they all submitted positive x-rays as evidence of total disability but were not afforded the section 410.490 presumption of disability mandated by *Coughlan.*

The Secretary contends that, even assuming the substantive validity of the "class" members' claims, the district court properly dismissed the action because: (1) the district court lacked jurisdiction; (2) the appellants and the class members failed to exhaust their administrative remedies; and (3) many of the potential class members failed to file timely administrative and judicial appeals and thus are jurisdictionally barred from seeking review at this time.

## I. JURISDICTION OF THE DISTRICT COURT.

■ At the outset, we accept the proposition that where Congress establishes a special statutory review procedure for administrative actions, that procedure is generally the exclusive means of review for those actions. *Louisville and Nashville R. Co. v. Donovan,* 713 F.2d 1243, 1246 (6th Cir.1983); *see also Heckler v. Ringer,* 466 U.S. 602, 616–17, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984) (refusing to consider whether mandamus jurisdiction is barred by 42 U.S.C. § 405(h) of the Social Security Act). Furthermore, the unavailability of simultaneous review of administrative actions in both the district court and the circuit court of appeals is strongly presumed. *Louisville & Nashville R. Co.,* 713 F.2d at 1246. In "narrow circumstances," however, "some residuum of federal ques-

tion subject matter jurisdiction may exist in the district court, although apparently otherwise precluded by a comprehensive statutory review scheme." *Id.* at 1246. That residuum may permit district courts in the proper circumstances to exercise mandamus jurisdiction over the agency under the BLBA. *Id.*

■ Before a district court can issue a writ of mandamus under section 1361 and exercise jurisdiction outside of that provided in the BLBA, the claimant must show either "patent violation of agency authority or manifest infringement of substantial rights irremediable by the statutorily prescribed method of review." *Id.* (citing *Nader v. Volpe,* 466 F.2d 261, 265–66 (D.C. Cir.1972)). In addition, the claimant must show that the agency, over which jurisdiction is exercised, has a clear nondiscretionary duty to act. *Heckler v. Ringer,* 466 U.S. at 616–17, 104 S.Ct. at 2022.

■ The circumstances of this case reveal that review of claims under the BLBA cannot remedy the infringement on the substantial rights of the "class" members. The Department of Labor has agreed to follow *Coughlan* in all cases pending in the Eighth Circuit after the date of that decision. The agency, however, refuses to reopen the claims of the "class" members here which were adjudicated prior to *Coughlan* and in which the claimant failed either to appeal to the Benefits Review Board (BRB) within thirty days after an initial determination, *see* 30 U.S.C. § 932(a) (1982) (incorporating 33 U.S.C. § 921(a) (1982) of the Longshore and Harbor Workers' Act), or within sixty days to the court of appeals after a final agency decision. *See id.* (incorporating 33 U.S.C. § 921(c) (1982) of the Longshore and Harbor Workers Act). Therefore, according to the Secretary, these claimants should not be afforded the benefit of the *Coughlan* decision because the BLBA provides the exclusive means of review of the class members' claims, and the periods of limitation in sections 921(a) and (c) bar their claims.

---

**2.** In order for the claimants to be accorded the presumption contained in section 410.490(b), 30 U.S.C. § 902(f)(2) required that they file a claim on or before the effective date of 20 C.F.R. Part 718 (1986), which would mean before April 1, 1980. *See* 20 C.F.R. § 718.1(b).

These claimants, however, deserve to have their claims heard. In the past, claimants under the BLBA have encountered enormous frustration in the processing of their claims due to administrative delays and determinations under improper standards. Congress has repeatedly attempted to ease the burden of proof of disability and to expedite black lung claims. More specifically, the BLBA's legislative history reveals Congress twice, in 1972 and 1977, instructed that then-pending or denied claims be reopened in order that claims could be readjudicated under what Congress believed to be more fair standards of disability.

The BLBA as established in 1969 (originally titled the Federal Coal Mine Health and Safety Act of 1969) provided benefits to coal miners who were totally disabled due to pneumoconiosis. Pub.L. No. 91–173, 83 Stat. 742 (codified as amended at 30 U.S.C. §§ 901–41 (1982 & Supp. III 1985)). The 1969 Act was divided into three sections: Part A (sections 901–02) provided general findings and definitions; Part B (sections 921–25) applied to claims filed before December 31, 1972, administered by the Secretary of Health, Education and Welfare; Part C (sections 931–41) applied to claims made after December 31, 1972.[3]

To qualify for benefits, the 1969 Act required a claimant to establish that the miner (1) had pneumoconiosis, (2) that arose out of coal mine employment, (3) causing total disability or death. 30 U.S.C. § 902 (1976) (codified as amended in 1972). To assist claimants in meeting these requirements, the 1969 Act provided an irrebuttable presumption, *see* 30 U.S.C. § 921(c)(3), and a rebuttable presumption. The rebuttable presumption presumed either that a disabled, 30 U.S.C. § 921(c)(1), or a deceased, 30 U.S.C. § 921(c)(2), miner's pneumoconiosis arose out of coal mine em-

ployment if the miner had worked ten years or more in an underground mine.

Claimants under the 1969 Act, however, encountered difficulties in proving total disability under the rebuttable presumption. X-rays initially read as positive were reread as negative by government-retained radiologists ("B-readers"); the standard of disability in the 1969 Act—requiring a miner to be unable to do any substantial work, 30 U.S.C. § 902(f)—proved difficult to meet; and deceased miners' spouses lacked sufficient evidence to prove the miners died from pneumoconiosis. *See* J.S. Lapatto, *The Federal Black Lung Program: A 1983 Primer*, 85 W.Va.L.Rev. 677, 683–84 (1983). Because of the difficulties encountered by black lung claimants in gaining benefits under the 1969 Act, Congress found that the 1969 Act had not benefited "countless miners and their survivors who were the intended beneficiaries of the Black Lung program." Senate Rep. No. 92–743, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code and Cong. & Admin.News 2305, 2307. Thus, in 1972, before the effective date of Part C, Congress amended the 1969 Act. Pub.L. No. 92–303, 86 Stat. 153 (1972) (codified at 30 U.S.C. §§ 901–41 (1976)). The 1972 amendments extended the filing deadline under Part B to June 30, 1973, and delayed the effective date of Part C until January 1, 1974. 30 U.S.C. § 925 (1982).[4] The amendment also created an additional rebuttable presumption of pneumoconiosis for a miner without a positive x-ray. The presumption applied if the miner had fifteen years of underground coal mine employment and other evidence of a totally disabling pulmonary or respiratory impairment. 30 U.S.C. § 921(c)(4) (1982).

Finally, in order to redress the problem of excessive denials of past claims, the 1972 amendments required the Secretary of Health, Education and Welfare to reopen and review pending and *denied* claims un-

---

**3.** Part C allowed for alternative compensation either under a state statute meeting federal requirements or, absent such a statute, under a federal compensation system administered by the Secretary of Labor. 30 U.S.C. §§ 931–45 (1982). Under the federal program, the Department of Labor would attempt to locate a respon-

sible mine operator who would make payments for the miner. If no such operator could be identified, payments would be made from federal funds. 30 U.S.C. §§ 932, 934.

**4.** Claims filed between June 30, 1973, and January 1, 1974, were covered by 30 U.S.C. § 925.

der the new standards created by the 1972 amendments.[5] These reopened and pending claims were to be evaluated under new "interim" regulations, 20 C.F.R. § 410.490, the same regulations which this Court ultimately considered in *Coughlan.* The purpose of the regulations was to "permit prompt and vigorous processing of the large backlog of claims consistent with the language and intent of the 1972 amendments." 20 C.F.R. § 410.490(a). Under section 410.490, a miner's disability would be presumed to be due to pneumoconiosis if he or she submitted a positive x-ray and proved the disability arose out of coal mine employment. § 410.490(b).[6]

Once implemented, the "interim" regulations boosted significantly the number of approvals of Part B claims. J.S. Lopatte, *The Federal Black Lung Program: a 1983 Primer,* 85 W.Va.L.Rev. 677, 686 (1983).

Claims filed after January 1, 1974, under Part C, however, encountered obstacles to approval. Because no state black lung programs had been federally approved by 1973, *id.* at 688, the Department of Labor undertook full supervision of the black lung program under Part C. The regulations used by the Department of Labor, 20 C.F.R. §§ 410.101–.476 (1986), proved to be much more restrictive than the interim regulations, and, hence, the approval rate slackened considerably.[7]

Congress again became dissatisfied with the low approval rate, this time under 20 C.F.R. §§ 410.101–.476, and in 1977, passed the Black Lung Benefits Reform Act of 1977. Pub.L. No. 95–239, 92 Stat. 95.[8] The purpose of the 1977 amendments was the same as the 1972 amendments: to expand the coverage of the original act and to lessen restrictions on eligibility. *See, e.g., Underhill v. Peabody Coal Co.,* 687 F.2d 217, 220 (7th Cir.1982).

In the 1977 amendments, Congress specifically instructed the Secretary to adopt regulations with "criteria" no more restrictive than those in 20 C.F.R. § 410.490 and to apply them to all Parts B and C claims, including those pending or *denied* as of March 1, 1978, 30 U.S.C. § 945(b) (1982), as well as those Part C claims filed before April 1, 1980. 30 U.S.C. § 902(f)(2) (1982); *see also* H.R.Rep. No. 95–151, 95th Cong. 2d Sess. 25, 49, *reprinted in* 1978 U.S.Code Cong. & Admin.News, 237, 261, 284 (interpreting Section 12 of Black Lung Benefits Reform Act of 1977); House Conf.Rep. No. 95–864, 95th Cong., 2d Sess. 20, *reprinted in* 1978 U.S.Code Cong. & Admin.News, 308, 314. Thus, Congress once more instructed the Department of Labor to reas-

---

5. 30 U.S.C. § 941 (1970) (amended 1972) states:

The Secretary of Health, Education, and Welfare shall, upon enactment of the Black Lung Benefits Act of 1972, generally disseminate to all persons who filed claims under this subchapter prior to May 19, 1972, the changes in the law created by such Act, and forthwith advise all persons whose claims have been denied for any reason or whose claims are pending, that their claims will be reviewed with respect to the provisions of the Black Lung Benefits Act of 1972.

6. The presumption in 20 C.F.R. § 410.490(b) in pertinent part provides:

(b) **Interim presumption.** With respect to a miner who files a claim for benefits before July 1, 1973, and with respect to a survivor of a miner who dies before January 1, 1974, when such survivor timely files a claim for benefits, such miner will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of his death, or his death will be presumed to be due to pneumoconiosis, as the case may be, if:

(1) One of the following medical requirements is met:

(i) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis * * * [.]

\* \* \* \* \* \*

(2) The impairment established in accordance with paragraph (b)(1) of this section arose out of coal mine employment (see §§ 410.416 and 410.456).

7. Of the 128,000 Part C claims considered by the Department of Labor prior to March, 1978, only about half were processed. Of the processed claims, 68,100 were denied and 5,000 approved. *Id.* at 691 (citing *House Comm. on Ways and Means, Subcomm. on Oversight,* 97th Cong., 1st Sess., 13 (1981) Print No. 97–14).

8. Congress also passed the Black Lung Revenue Act of 1977, Pub.L. No. 95–227, 92 Stat. 11, which created the Black Lung Disability Trust Fund. The Trust Fund raised money through an excise tax on the sale of coal to pay benefits where the coal mine operator(s) who employed the miner could not be found. 30 U.S.C. § 934.

sess past denials under a more liberal standard of disability.[9]

After passage of the 1977 amendments, the Department of Labor adopted 20 C.F.R. Part 727 (1986). It was under these regulations that the Secretary of Labor was to review all claims filed before April 1, 1980, including those pending or denied as of the 1977 amendments.

As we observed in *Coughlan*, however, Part 727 did not provide "criteria" for determining disability under the BLBA, which were no more restrictive than those in the interim regulations contained in section 410.490. Section 410.490(b)(1)(i) presumed total disability due to pneumoconiosis upon showing of a positive x-ray and evidence that the impairment arose out of coal mine employment. Section 727.-203(a)(1), on the other hand, required a miner to have worked ten years before a positive x-ray would be sufficient to invoke the presumption.[10] *Coughlan* eventually overturned this improper regulation. It did not, however, determine the fate of those claimants who had been denied benefits under the improper standard from March 1, 1978, to March 27, 1985, when *Coughlan* was decided.

■ Are the rights of the claimants which were violated sufficiently substantial or are the violations sufficiently patent to justify the invocation of mandamus jurisdiction? From the legislative history of the BLBA, it is clear that Congress has consistently demonstrated a deep concern for the plight of black lung benefits claimants. Congress reopened black lung claims in 1972 and 1977 in order that deserving claimants could more easily obtain benefits. In doing so, Congress overrode the BLBA procedures by specifically requiring the Department of Labor to review not only pending claims but also those claims that had been denied and to do so without regard to the thirty or sixty-day period of limitations in the BLBA. *See* 30 U.S.C. § 932 (1982). By reopening black lung claims twice and requiring adjudication under more liberal standards, Congress demonstrated that it considered the rights involved in those claims to be substantial. Therefore, with respect to those claims pending or denied as of the effective date of the 1977 amendments, March 1, 1978, Congress has indicated that those rights are substantial.

Similarly, those who filed their claims between March 1, 1978, and April 1, 1980, have substantial rights at stake. As previously mentioned, Congress has stated that all claims filed between March 1, 1978, and April 1, 1980, should be treated under the same standard as those pending or denied as of the 1977 amendments. *See* 30 U.S.C. § 902(f)(2)(C). It should not be necessary for Congress to pass a third act requiring the Secretary to reconsider these claims under the proper standard.

9. Congress also instructed the Department of Health, Education and Welfare (now the Department of Health and Human Services) to notify Part B claimants that they had a right to have their pending or denied claim reconsidered under the 1977 amendments. 30 U.S.C. § 945(a)(1). Part B claimants had the option of having: (1) the Secretary of Health, Education and Welfare review the claim based on evidence already in the record "taking into account" the 1977 amendments, § 945(a)(1)(A), and if the claim was denied, it would be transferred to the Department of Labor for review with the opportunity to submit additional evidence, § 945(a)(2)(B); or (2) the claimant could elect to have the claim transferred directly to the Department of Labor with the opportunity to submit additional evidence, § 945(a)(1)(B). If the claimant chose to have the Department of Health, Education and Welfare review the claim, and it approved the claim, the Department would transfer the claim to the Department of Labor with "an initial determination of eligibility" directing that the Department of Labor provide payment of benefits in accordance with Part C. § 945(a)(2)(A).

Since the Department of Health and Human Services is not a party to this suit, we have restricted our analysis to the role of the Department of Labor.

10. The pertinent part of section 727.203 reads:

(a) **Establishing interim presumption.** A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title)[.]

■ In order for the district court to exercise mandamus jurisdiction, the agency over which jurisdiction is being exercised must also owe a clear nondiscretionary duty to act. *Heckler v. Ringer*, 466 U.S. at 616–17, 104 S.Ct. at 2022. The Secretary argues that no such duty is owed here. According to the Secretary, neither *Coughlan* nor the BLBA requires the Secretary to review *sua sponte* the denied claims of the claimants here.

The Secretary, while correct in his interpretation of *Coughlan*, ignores the duty created by the 1977 amendments to the BLBA. These amendments *inter alia* require that all pending or denied Parts B and C claims be reviewed under criteria no more restrictive than those contained in the interim regulation, section 410.490. They also require that all future claims be adjudicated under that same standard.

With respect to the claimants here who had claims pending or denied as of the 1977 amendments, Congress explicitly stated that the Secretary owed a duty to reopen their claims and review them under the new standard in the 1977 Amendments. The Secretary did not fulfill this obligation imposed on him by Congress. Even if review of those claims did occur, the Secretary did not do so under the proper standard. Therefore, the Secretary still owes this duty to these claimants.

As to the claims filed between the effective date of the 1977 amendments, March 1, 1978, and April 1, 1980, Congress has stated that these claims should be judged under the same standard. *See* 30 U.S.C. § 902(f)(2) (1982). The Secretary therefore owes the same duty to these claimants to reopen and consider their claims under section 410.490.[11]

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES.

■ Besides arguing that the BLBA excludes the district court from exercising jurisdiction over the Department of Labor, the Secretary also contends that no court can review the appellants' or any "class" members' claims until they have exhausted their administrative remedies.

Before discussing this issue, we must clarify what claims of the appellants and the "class" are at issue. As stated in Section I, the district court could not properly exercise mandamus jurisdiction and determine *the validity* of the "class" members' claims for benefits. The duty which the district court could require the Secretary to perform is a reopening of claims wrongfully denied under section 727.203(a) so that they could be considered under section 410.490. Once the Secretary has reopened the claims, the appellants and the "class" members must exhaust their administrative remedies with regard to their substantive claims. This Court therefore need only decide whether the "class" members must exhaust their administrative remedies in seeking to have their claims reopened and considered under section 410.490.[12]

The Supreme Court has adopted a pragmatic approach to statutory finality requirements. *Bowen v. City of New York*, —— U.S. ——, —— – ——, 106 S.Ct. 2022, 2031–33, 90 L.Ed.2d 462, 477–78 (1986). *See also Polaski v. Heckler*, 751 F.2d 943, 951 (8th Cir.1984) (*citing Mental Health Ass'n of Minnesota v. Heckler*, 720 F.2d 965, 969 (8th Cir.1983)), *vacated and remanded*, —— U.S. ——, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), *reinstated*, 804 F.2d 456. In *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976), the Court held that waiver of the exhaustion requirement is appropriate "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate."

The circumstances of this case reveal that deference to the agency is not appro-

---

11. Because we hold the district court has jurisdiction under 28 U.S.C. § 1361, we do not consider appellant's claim that this court has mandamus jurisdiction under 28 U.S.C. § 1651.

12. As noted in the previous section, the Secretary has agreed to follow *Coughlan* in all claims now pending in the Eighth Circuit. We construe this agreement to apply to pending claims in which the *Coughlan* issue was not specifically raised but is present.

priate. Although the Department of Labor has agreed to follow *Coughlan* in all cases still pending in the Eighth Circuit after the date of that decision, the agency refuses to reopen claims adjudicated prior to *Coughlan* where the claimant failed either to appeal to the BRB within thirty days after an initial determination or within sixty days to the court of appeals after a final agency decision. Further consideration of this issue by the Department of Labor will not in any way clarify or alter the agency's position. *See Mental Health Ass'n of Minnesota,* 720 F.2d at 970. Furthermore, this is not a case where agency expertise is needed to resolve the legal issue. *See Southern Ohio Coal Co. v. Donovan,* 774 F.2d 693, 702 (6th Cir.1985) (certain procedures of the Federal Mine Safety and Health Review Commission held unconstitutional; coal mine operator's failure to exhaust administrative remedies not preclusive of judicial review). The matter involved is strictly legal: whether the Department of Labor owes a statutory duty to the "class" members to reopen their claims. We believe it does. Therefore, the "class" members do not have to exhaust their administrative remedies with regard to the issue of the reopening of their claims.

## III. PERIOD OF LIMITATIONS.

The Secretary argues that even if he owes a clear substantive duty, a writ of mandamus cannot issue because the claims of "class" members may be procedurally barred by their failure to take timely administrative or judicial appeals from the denials of their claims under the BLBA. Thus, according to the Secretary, the Department of Labor is without jurisdiction to reopen such claims, and this Court is without jurisdiction to hear this appeal.

The statutory review scheme in the BLBA, as devised by the 1972 amendments, provides that a compensation order by an administrative law judge must be appealed within thirty days of issuance to the BRB. 30 U.S.C. § 932(a) (1982) (incorporating 33 U.S.C. § 921(a) (1982) of the Longshore and Harbor Workers' Compensation Act). Decisions of the BRB must be appealed to the circuit courts of appeals within sixty days. *Id.* (incorporating 33 U.S.C. § 921(c) (1982) of the Longshore and Harbor Workers' Compensation Act).

■ We hold that despite these administrative and judicial appeals limitations, the Department of Labor has jurisdiction to reopen the claims of the "class" members whose claims were wrongfully denied under 20 C.F.R. § 727.203(a), although the denials may not have been timely appealed.

As discussed in Section I, the Secretary continues to owe a duty to all "class" members whose claims were not properly reopened and adjudicated according to the eligibility standard recognized in *Coughlan.* That duty arises for all claims pending or denied as of the 1977 amendments from 30 U.S.C. § 945 of the BLBA in which Congress, by implication, waived the thirty and sixty-day deadlines for appeals of those claims under the BLBA.

■ Clearly Congress had the authority to waive the limitation created by the deadlines. Because the appeals deadlines are creatures of legislation, Congress could change or disregard the deadlines regardless of whether the deadlines are considered jurisdictional. While any disregard or lengthening of the thirty or sixty-day periods must be strictly construed as an extension of a waiver on sovereign immunity, *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983), a court cannot restrict the waiver more severely than Congress intended. *Bowen v. City of New York,* —— U.S. at ——, 106 S.Ct. at 2029, 90 L.Ed.2d at 474 (citing *Block,* 461 U.S. at 287, 103 S.Ct. at 1819).

■ In addition, section 945(b)(1) states that review by the Secretary of Labor of those claims should "tak[e] into account the amendments made to this part by the Black Lung Benefits Reform Act of 1977." The Secretary has yet to take properly "into account" the 1977 amendments. Therefore, the Secretary continues to have this obligation to reopen these claims under the *proper standard* as recognized in *Coughlan.*

In regard to those claims filed between March 1, 1978, and April 1, 1980, Congress also stated in section 902(f)(2)(c) that the Secretary of Labor should not apply criteria more restrictive than those contained in 20 C.F.R. § 410.490. Thus, although Congress never directed that these claims be reopened, Congress did instruct that these claims be adjudicated under the same standard as those pending or reopened under the 1977 amendments. It would therefore be contrary to congressional intent to allow claims pending or denied as of March 1, 1978, to be treated under a different standard than claims filed between March 1, 1978, and April 1, 1980. Therefore, any claims filed between March 1, 1978, and April 1, 1980, which were subsequently denied should be reopened along with those claims pending or denied as of March 1, 1978.

■■■ The Secretary also contends that the thirty- and sixty-day periods of limitation in 33 U.S.C. § 921(a) and (c) are jurisdictionally based and limit the district court's mandamus jurisdiction.[13] We disagree. We find no grounds for concluding that these periods of limitations affect the district court's mandamus jurisdiction. *See Ellis v. Blum,* 643 F.2d 68, 78–82 (2d Cir. 1981) (determining that 42 U.S.C. § 405(h) of the Social Security Act does not completely prohibit mandamus jurisdiction in the district courts to review agency action).

The periods of limitations in 33 U.S.C. § 921(a) and (c) exist within the BLBA's specific statutory review scheme and become largely unmeaningful for actions based on jurisdictional grants outside of the BLBA, such as mandamus under section 1361. *See City of New York v. Heckler,* 742 F.2d 729, 739 n. 7 (2d Cir.1984) (mandamus jurisdiction of district court in social security action unaffected by sixty-day period of limitations in 42 U.S.C. § 405(g)), *aff'd on other grounds, City of New York,* —— U.S. at ——, 106 S.Ct. at 2022, 90 L.Ed.2d at 462. Specifically, neither the thirty-day limitation on administrative appeals nor the sixty-day limitation on appeals to the circuit courts contemplates a claim before the district court.[14] Therefore, once it has been determined, as it was in Sections I and II, that the BLBA permits, in limited circumstances, the exercise of mandamus jurisdiction by the district court and that the circumstances of this case fit within those limitations, the periods of limitations contained in the BLBA cannot be considered a further limitation on the mandamus jurisdiction of the district court.

## IV. CONCLUSION.

On remand, the district court should certify a class consisting of those persons who (1) have filed claims for benefits under the BLBA between December 30, 1969, and

---

**13.** As the Secretary observes, three Circuits have held the thirty-day administrative appeal period to be jurisdictionally based. *See Insurance Co. of North America v. Gee,* 702 F.2d 411 (2d Cir. 1983); *Wellman v. Director, Office of Workers' Compensation,* 706 F.2d 191 (6th Cir.1983); *Bennett v. Director, Office of Workers' Compensation,* 717 F.2d 1167 (7th Cir.1983). And, four Circuits, including this Circuit, have held that the sixty-day judicial appeal period is jurisdictional. *Clay v. Director, Office of Workers' Compensation,* 748 F.2d 501 (8th Cir.1984); *Pittson Stevedoring Corp. v. Dellaventura,* 544 F.2d 35 (2d Cir.1976), *aff'd sub nom., Northwest Marine Terminal v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977); *Midland Ins. Co. v. Adam,* 781 F.2d 526 (6th Cir.1985); *Arch Mineral Corp. v. Office of Workers' Compensation Programs,* 798 F.2d 215 (7th Cir.1986).

The nature of the periods of limitations in 33 U.S.C. § 921(a) and (c), however, may have to be reevaluated in light of *Bowen v. City of New York,* —— U.S. at ——, 106 S.Ct. at 2022, 90 L.Ed.2d at 462. In *City of New York,* a class sued the Social Security Administration arguing that an unlawful unpublished policy of the Administration caused deserving claimants to be denied benefits. —— U.S. at ——, 106 S.Ct. at 2026, 90 L.Ed.2d at 470. Many members of the class had not appealed their denials within sixty days. The Court found that the sixty-day requirement in 42 U.S.C. § 405(g) was not a jurisdictional bar to review by the federal courts.

**14.** 33 U.S.C. § 918 grants jurisdiction to the district court for the limited purpose of collecting defaulted compensation payments. This provision is irrelevant to this dispute.

April 1, 1980; (2) have claimed a disability due to pneumoconiosis caused by employment in the coal mining industry; (3) have submitted a positive x-ray as proof of the presence of pneumoconiosis; (4) have been denied the benefit of the presumption of pneumoconiosis contained in 20 C.F.R. § 727.203(a)(1) because they did not prove that they had worked ten years in the coal mines; (5) were not afforded the opportunity to submit a claim under 20 C.F.R. § 410.490; and (6) do not have claims under 20 C.F.R. § 410.490 or 20 C.F.R. § 727.-203(a)(1) currently pending before the Department of Labor. We emphasize that the Secretary is to consider each claim individually and that appeals from these decisions will be made in accordance with the review scheme of the BLBA.