CREEK COAL COMPANY, INC.; Old Republic Insurance Company, Petitioners,

v.

Ray BATES; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 96–3786.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 16, 1997.

Decided Dec. 31, 1997.*

On January 12, 1998, the court designated the opinion as one recommended for full-text

Laura Metcoff Klaus (briefed), Mark E. Solomons (argued and briefed), Arter & Hadden, Washington, DC, for Petitioners.

Elizabeth Hopkins (argued and briefed), Allen H. Feldman and Edward D. Sieger (briefed), U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Respondent Director, Office of Workers' Compensation Programs, United States Department of Labor.

Robert G. Miller (briefed), Perry, Preston & Miller, Paintsville, KY, for Respondent Bates.

Before: RYAN, SUHRHEINRICH, and COLE, Circuit Judges.

## OPINION

COLE, Circuit Judge.

Petitioners Creek Coal Company, Inc. ("CCI") and Old Republic Insurance Company ("Old Republic") appeal an adverse decision by the Benefits Review Board of the United States Department of Labor ("the Board") granting Ray Bates' claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 931 *et seq.* They contend that the Board erred in finding that CCI was the responsible operator and that Old Republic, its insurance carrier, was liable for the payment of benefits as it interpreted them to be due under an insurance policy issued by Old Republic. For the following reasons, we reverse the Board.

## FACTS AND PROCEEDINGS BELOW

Ray Bates ("Bates" or "claimant") filed a claim for black lung benefits which has given rise to this appeal. From March 29, 1976 to August 19, 1977, Bates was doing business as Creek Coal Company ("CCC"), a sole proprietorship, and was engaged in coal mine work. Bates had only a couple of employees and did much of the drilling and loading of coal himself. Bates obtained a workers compensation insurance policy from Old Republic running from August 4, 1976 until August 4, 1977. The policy included a federal Coal Mine Health and Safety Act endorsement as required by the Black Lung Benefits Act ("BLBA"), *see* 30 U.S.C. §§ 932, 933, providing for the payment of benefits due to miners under the BLBA. Prior to the expiration of the policy, Bates purchased a new policy for the period July 13, 1977 until July 13, 1978. That policy also included the endorsement required by the BLBA. After obtaining coverage under the second policy, Bates incorporated CCC. It was thereafter known as Creek Coal Company, Inc. ("CCI"). On October 29, 1977, Bates retired from coal mine employment.

Bates filed a claim for black lung benefits on May 9, 1979. It was administratively denied on September 17, 1979. The district director named CCC as the responsible operator. Upon the claimant's July 1980 request, he was given a hearing. A hearing was held on May 14, 1981 before an administrative law judge ("ALJ"). At that hearing, Old Republic argued that the insurance policy at issue did not cover an owner of a coal company. The ALJ noted that CCC had been out of business since approximately October 1977 and remanded the case to the district director for admission of additional evidence and further review of the responsible operator issue. On November 17, 1981, the De-

partment of Labor issued a statement that it believed that Creek Coal and Old Republic were properly designated as liable parties.

The claim was then referred to an ALJ on April 8, 1982 for another hearing. A second hearing was held before an ALJ on April 17, 1984. The ALJ issued a decision on March 8, 1985. He found that the evidence was sufficient to establish an invocation of the interim presumption of total disability pursuant to 20 C.F.R. § 727.203(a)(1) and insufficient to establish a rebuttal that the disability did not arise from coal mine employment under 20 C.F.R. § 727.203(b). The ALJ awarded benefits. As to the responsible operator issue, the ALJ found that since the claimant had worked for CCI for only two months, the director had named the wrong responsible party and thus he designated the Black Lung Disability Trust Fund liable if, on remand, the district director found no other responsible operator. In April of 1985, the Director filed a motion for reconsideration of the ALJ's decision on this issue, arguing that CCI was the responsible operator as the successor operator to CCC. In June of 1985, the ALJ issued a decision upon reconsideration finding CCI to be the successor operator to CCC, and finding Old Republic, as the insurance carrier, liable for benefits.

On July 25, 1985, CCI and Old Republic appealed the ALJ decision to the Board, challenging the ALJ's liability determination. By an order dated March 11, 1993, some eight years later, the Board permitted supplemental briefing in the appeal "in light of the many changes in the law which have taken place since the original decisions were issued." *See* J.A. 9. In supplemental briefs, CCI and Old Republic challenged the ALJ's responsible operator finding as well as his finding of insufficient evidence to establish rebuttal under § 727.203(b)(3). The Director urged that the liability and responsible operator findings be affirmed. The claimant also argued in support of the ALJ's decision.

The Board affirmed the ALJ's decision in a decision dated September 23, 1993. As to the responsible operator issue, the Board noted that the record established that CCC became CCI without interrupting operations and that any liability incurred by CCC, the

sole proprietorship, was incurred by CCI, the incorporated form of the same business enterprise. The Board thus affirmed the ALJ's decision on the basis that the prerequisite one-year minimum employment was satisfied because the claimant's two months of employment with CCI merged with his two years of employment with CCC and thus CCI was properly considered the "primary operator" by virtue of being the last employer for which the claimant worked. The Board went on to affirm the ALJ's liability decision, reasoning that because Old Republic insured both CCC and CCI, it was liable for any benefits due under the policies.

CCI and Old Republic subsequently filed with the Board a motion to reconsider its decision and the Board issued a decision on May 23, 1996. The Board held that the regulations treated a business entity resulting from a change in business form as the primary responsible operator and thus CCC and CCI were, for purposes of determining liability for benefits, the same entity. The Board also rejected CCI and Old Republic's assertion that the Board had impermissibly preempted state law in violation of the McCarran Ferguson Act, 15 U.S.C. § 1012(b), with its insurance coverage determination. The Board considered the provisions of the policy which included the endorsement required by federal law. Looking to the definition of "miner" as amended by Congress in 1978, the Board held that Bates fit the amended definition of "miner" and that he was thus covered by the insurance policy. Accordingly, the Board again affirmed the ALJ's decision awarding benefits.

Old Republic and Creek Coal subsequently filed a timely notice of appeal with this court and we have jurisdiction over petitions for review of final decisions of the Board pursuant to 33 U.S.C. § 921(c), which is incorporated by reference in 30 U.S.C. § 932(a).

## DISCUSSION

CCI and Old Republic present three arguments for reversal of the Board's decision. They first argue that the Board erred by not viewing CCI, the corporate form of the sole proprietorship CCC, as a "successor" opera-

tor under the statute such that CCC and *not* CCI would be primarily liable for Bates' claim. The petitioners also contend that the Board's decision that the policy covered Bates preempted Kentucky workers compensation law, in contradiction of the McCarran Ferguson Act, because Kentucky law allows sole proprietors and self-employed operators to opt out of workers compensation coverage for themselves. The petitioners lastly contend that when Bates purchased coverage from Old Republic, the statutory definition of "miner" did not include coverage of Bates. The petitioners argue that the Board impermissibly retroactively applied a later amended definition of "miner" to the terms of the policies at issue. We address only the retroactivity issue as our conclusion regarding that issue is dispositive of the petitioners' appeal.

Our task in reviewing decisions of the Board is limited to correcting errors of law and ensuring that the Board adhered to the substantial evidence standard in its review of the ALJ's factual findings. *Paducah Marine Ways v. Thompson*, 82 F.3d 130, 133 (6th Cir.1996); *Pyro Mining Co. v. Slaton*, 879 F.2d 187, 190 (6th Cir.1989). As this court has plenary authority to review the Board's legal conclusions, we review such de novo. *Paducah Marine Ways*, 82 F.3d at 133. A retroactivity challenge to the application of a statutory amendment is a question of law which we review de novo. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1159 (11th Cir.1993).

When Bates bought his insurance policies from Old Republic in August 1976 and July 1977, the policies did not cover him. Prior to March 1, 1978, the effective date of the 1978 amendments to the BLBA which included an amendment to the definition of "miner," sole proprietors and self-employed owner-operators of coal mines were not covered by the BLBA-required endorsement to workers compensation insurance policies in the Sixth Circuit. *See Montel v. Weinberger*, 546 F.2d 679, 681 (6th Cir.1976). Prior to March 1, 1978, the relevant statutory definition of miner was "any individual who is or was employed in a coal mine," *see* 30 U.S.C. § 902(d) (1977), and such a definition did not

include self-employed individuals. *See Montel*, 546 F.2d at 681. As of March 1, 1978, the effective date of the 1978 BLBA amendments, the statutory definition of "miner" was "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal . . . . [and] any individual who works or has worked in coal mine construction or transportation . . . to the extent such an individual was exposed to coal dust as a result of such employment." 30 U.S.C. § 902(d) (1978); *see also* S.Rep. No. 209, 95th Cong., 1st Sess. 20 (1977) (new "expanded definition . . . includes those managers or owners who themselves work or who have worked in the extraction of coal"); H.R. Conf. Rep. No. 864, *reprinted in* 1978 U.S.C.C.A.N. 308, 310 (legislation "modified the definition to include all self-employed miners"); *see also Louisville and Nashville R.R. Co. v. Donovan*, 713 F.2d 1243, 1248 (6th Cir.1983) (noting that earlier definition of "miner" did not include all persons working in or around a coal mine).

An "express command," "unambiguous directive" or otherwise clear statement from Congress is necessary to authorize the retroactive application of a statute. *Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2062, 138 L.Ed.2d 481 (1997) (citing and quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 263, 272–73, 286, 114 S.Ct. 1483, 1495–96, 1500, 1508, 128 L.Ed.2d 229 (1994)); *see also Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); *Watson v. Sec. of Health, Education and Welfare*, 562 F.2d 386, 389 (6th Cir.1977). Congress specified that the effective date of the 1978 amendment to the definition of miner appearing in 30 U.S.C. § 902(d) was March 1, 1978. Black Lung Benefits Reform Act of 1977, Pub.L. 95–239 § 20(a), 92 Stat. 95 (1978), as set out in 30 U.S.C. § 901 note; 30 U.S.C. § 902 note. "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf*, 511 U.S. at 257 & n. 10, 114 S.Ct. at 1493 & n. 10 (citing *Schwabenbauer v. Board of Educ. of City School Dist. of City of Olean*, 667 F.2d 305, 310 n. 7 (2d

**738**

Cir.1981); *Condit v. United Air Lines, Inc.,* 631 F.2d 1136, 1139–40 (4th Cir.1980); *Jensen v. Gulf Oil Ref. & Mktg. Co.,* 623 F.2d 406, 410 (5th Cir.1980); *Sikora v. Am. Can Co.,* 622 F.2d 1116, 1119–24 (3d Cir.1980)).

The amendment extending coverage to self-employed mine owners like Bates became effective on March 1, 1978, and as such, the BLBA-required endorsement in the policies at issue did not cover Bates. *See, e.g., Clayton Coal Co. v. Liberty Mutual Ins. Co.,* 594 F.2d 1378 (10th Cir.1979) (holding that black lung benefits not available under policy endorsement for a time period outside of the policy period). Congress amended the BLBA to extend coverage to sole proprietors and self-employed operators via an expansion in the definition of "miner" after the policies were purchased and after Bates left his coal mine work. Given that Congress prescribed a specific effective date for the statutory amendment at issue, we need proceed no further with any retroactivity analysis. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505 ("the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules."). The absence of any retroactive intent on the part of Congress ends our inquiry.

## CONCLUSION

For the foregoing reasons, the petition for review is GRANTED and the Board's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.